Next case we have this morning, I guess it's this afternoon. Castellanos v. Mukasey, number Good morning, Your Honor. Mike Gilberti on behalf of Mr. Castellanos. And I reserve three minutes, please, for rebuttal. That's fine. In April of 2008, Mr. Castellanos was released from the Department of Justice custody and placed in the custody of the Department of Homeland Security. Clarify something at the outset. What's the statute that we should be talking about? Is it really 1231 or should it be like 1226? Well, that was, you anticipated where I was going with this because in reviewing Zadvitas, forgive my Lithuanian, it's not very good. They say, the Supreme Court says that there are two things that happen. There are two periods. There's the during removal proceedings period that's subject to 1226. And then there's the post removal period that's subject to 1231A5. And our position has been to this point that we can't tell. And I'll tell you why we can't tell. In preparing for this argument today, I went back and I tried to do a chronology of what happened. And that's why I was starting with April of 2008 when he was released from the Department of Justice custody into the Homeland Security custody based on the detainer that was filed in, I believe it was September of 2007. At that point, there should have been a determination, some sort of reinstatement of the removal order, the previous removal order. And in reviewing everything that we've found since this time, I can't find one. There are various other orders. But my point is, doesn't 1226A authorize Castellanos' continued detention since he's being detained, quote, pending a decision on whether he is to be removed from the United States, close quote? That would apply, but we're not, I can't tell you that that's where we are because there are a couple of things that complicate that. And I would refer you to the government's supplemental appendix for one of them, Your Honor. In June of 2008, an immigration officer, Hutchison, in New Jersey, conducted the initial reasonable fear hearing. And on June 18th of 2008, Judge Reichenberg in the immigration court in Newark entered a final removal order. And that's in the government's appendix, a supplemental appendix at page 10. And the language there states, it is hereby ordered that the decision of the immigration officer is affirmed and the case returned to DHS for removal of the alien. This is a final order. There is no appeal available. What is complicating things here, Your Honor, is what happened over in New York with the Second Circuit's intervention and everything else. Because if I understand the jurisdictional analysis, the stay in the Second Circuit would not have affected this order. Add in one additional thing, Your Honor. In the government's appellee's opposition to the motion for bail and the motion for summary affirmance, on page 7, footnote 3, the government asserts, technically, as Osman Castellanos, my client, is under a final order of removal that has not been reopened, referring to the original removal order before he came back. Maybe that's how we got the confusion. But in this case, it's pending removal after he came back, correct? Pardon? In other words, he's being detained pending a final order of removal for having come back into the United States. Well, the question is, where does that kick in? Does Judge Reichenberg's order operate as a final removal order? What happened with Judge Wiginton, and I think at that time both Mr. O'Malley and I … I came back because I was fearful for my life in light of my witnessing a murder back in El Salvador. And so it would appear that what we're talking about is, can he stay here the second time after having once been removed? So it's really, there is, he's being detained pending a decision on whether he is to be removed. But in order to do that, as I understand, I'm not an immigration lawyer, and I've been dealing with my immigration counsel, and he's been very patient with me at various points. That in order to do that, to get the pending removal going, they have to reinstate the previous removal order and have proceedings based upon that. And I think that that's under 1231 as well. I hope I've gotten the right site there. And so … Well, usually 1231, what happens is you have a final order of removal, and there's no country that will take this person. So then the question becomes, what do you do? Do you keep this person detained indefinitely? And Zavita says, well, if removal is not reasonably foreseeable in the circumstance I just gave, the court should hold continued detention unreasonable. If removal is reasonably foreseeable, they can continue detention. And then if you go past six months, you're in sort of another world. But I don't see how Zavita applies to this case. Because we know exactly where he'll be deported and there won't be any obstacle in immediate deportation or removal if he loses his asylum bid. But isn't his asylum bid the relevant proceeding that we look at now? And pending the determination of that asylum bid, we don't know whether he will be removable or not. And it may be that the court will grant asylum, in which case the issue is moot. Well, but the question becomes, I think, again, getting a little bit picky on the analytical side of this thing. When we were in front of Judge Wigginton, she viewed the operative situation to stay from the Second Circuit. Since that time, Mr. O'Malley and I have been able to hash out the much more relevant situation that is here, which was the proceedings in the immigration court in Newark. But the question, I'm not sure that I can resolve. And if that's the order that you're reviewing, you may have to remand it for a determination to get the logic right on where we are and what really happened and where we are. As to which statute applies here. Now, you're basically here on the issue of bail, right? Correct, correct. And, you know, as Judge Ambrose, you know, jumped the gun on my argument, I was ready to argue it either way that based on what Judge Wigginton stated, she was sympathetic to both the he's not a danger to the community and he's not a risk of flight. And if we'd gotten to the 1226 type of analysis, maybe I could have convinced somebody to release him on bail because of the substantial contacts with the community and everything else. But we never got there because the judge said it's premature under the Second Circuit analysis, which sort of confused things based on why we're here and how we got here. So trying to get this back on the right track. But if the right track is 1226, it still doesn't help you. Because there you can detain pending a decision. And Savitas doesn't apply. And I'm not even sure that the case that Kim would necessarily apply in this case, even though that does deal with 1226. Well, the question is do we have a record that can analyze that and produce a decision on that at this point? Wouldn't you have to send it back and have it determined and get all the facts pinned down properly before we do that? Since it's clear that what the judge was doing there was trying to gauge the effect of the Second Circuit stay on the situation and we all missed the boat on where the case really was procedurally. And nobody really understood the intertwinings between the upcoming CAT hearing and what was going on that and whether there was a final order or wasn't. But you still need to show that his detention is indefinite. Let's just say all these cases somehow were applicable to you. You still have to show that his detention is not indefinite or is indefinite. And it would seem that it's hard to argue that the detention is indefinite when you know, as Judge Roth just said, that after you have a hearing and if he loses, he's removed. Once he has the hearing, it's reasonably foreseeable there's a definite time. But where we are right now is there's not even a disposition date right now for the appeal to the EOIR. But the continuances, I mean, there would have been. He requested continuances, did he not? He did originally, yes, Your Honor. How many continuances did he request? I think the first one was to December of 2008. I'm not sure he requested the second one. The second one was to January of 2009, which is when it finally did occur. When we were in front of Judge Wigginton in November, I guess it was November 5 of 2008, it had just been continued from October 26 to December whatever, December 17. But at this point, I mean, the question is, is it reasonably, you know, is the continued detention reasonable when he's been detained for 13 months now and he could be detained another five, six, seven months up to a year without having, you know, the opportunity of being released when he does have the contacts of the community and he doesn't. He poses a danger to the community. Thank you. Thank you, Mr. O'Malley. Good morning. May it please the Court. I'm Peter O'Malley. This is the U.S. Attorney on behalf of the appellees. The initial detention, this is very. Just at the outset, why did the government not argue detention should have been considered under 1226 as opposed to 1231? Because he was originally taken in under 1231, but he's in a special proceeding where there's a separate statute. But he's complaining. He's saying that there's been intervening events after he was first removed. Right. If he goes. But now at this time, allow him for asylum consideration or cat consideration. Okay. If the first intervening event is the mysterious stay at the Second Circuit, which I would argue should have. I mean, it was entered, but it's not clear how the Second Circuit had jurisdiction to enter the stay because what happened. Well, usually what happens is it comes up and you don't have a full record before you and you have the staff attorneys looking at it and they're saying is there something that should go before a merits panel or is there not? If there's something that should go before a merits panel, in this case he's claiming that he would be at physical risk were he to be sent back. You can see why somebody would take that situation and grant a stay in order they can sort things out. True, but it was filed as habeas in the Eastern District of New York. The district judge severed the custody portion of the habeas petition and transferred it to the District of New Jersey. And instead of dismissing what was an incorrectly filed petition for review, he transferred it to the Second Circuit under the procedure that was in effect only in May of 05 when the Real Idea Act was passed and said any cases that were pending that raised, that were in effect challenges to removal orders plus with question of custody should be transferred to the Courts of Appeals. So on that procedural background, it's kind of, you know, the Second Circuit proceeded to enter a stay while it was dismissing all of the non-custodial issues. But now we're here. But at this point we're here. The question is can he continue to be detained? Yes. If Zavitas doesn't apply, and I think there's an argument that Kim doesn't apply because it's not really necessarily on appeal from an order of removal. Then the rationale in the Ninth Circuit, Pietro Romero's case, I think is pretty persuasive and is what I think would be the best result, lead to the best result in this case. His detention is pending the outcome of the reasonable fear of the appeal, his loss of his receiving before the IJ for the reasonable fear and the deferral of removal under the cap. So the best he can get, even if he wins, is that he's not to be removed to El Salvador. That doesn't mean he can't be removed someplace else if another country will take him. That will lead to another set of issues when and if that occurs. But if you have… In that case, then you would be under 1231. Right. At that point he would be. And if no other country was willing to take him it would be… Then he'd be a Zavitas type of case and then he'd get his six-month continuing post-order custody review when they determine whether his ties to the community and risk of danger to the community would permit him to be released. But we're not there yet because he still has the proceeding pending on the deferral of removal issue, which there is a provision under Section 235, which is codified at Section 8 U.S.C. 1225, B1, capital B, Roman number 3, capital Roman number 4, which is mandatory detention while the BIA is considering the… Is that 1225? Correct. 1225, B1, B34. And he is seeking, as in the Prieto-Romero case, he is seeking further administrative review of the Catt claim. He's not, as Your Honor suggested earlier, Judge Ambrose, he's not stuck in what Prieto-Romero described as a removable but unremovable limbo, which was the case in Zavitas because he has a foreseeable end to this, that the briefs are in front of the BIA. I think they were submitted by the end of April. I don't know how many delays there were. I know it was supposed to be an expedited appeal, but apparently it moved along a little more slowly. And there is no evidence that he's not able to be removed because he's been removed to El Salvador before, being in the situation he's in now of his illegal reentry. We're just sort of rehashing the facts. Is there anything else you want to add that we've not already considered? No, he's not. If he gets to, if the court should determine that he somehow is in the 241 posture, then he comes under the analysis in the Prieto-Romero case. He has a foreseeable end to this. It's not indefinite. It's not being held as Zavitas was potentially for years without a foreseeable end. And once he is through with the BIA appeal, then he'll be in a different situation. And when he, unless they, if he loses, then he's removed to El Salvador. And whatever happens, unfortunately, is not in our hands. All right. I have no further questions. Thank you. Mr. Gaberty. Thank you very much. Thank you to both counsel. And we'll take the matter under advisement.